IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CARLTON UNDERWOOD, | : |
| Plaintiff, | : |
| VS. | : |
| | :  5 : 10-CV-151 (MTT) |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social Security, | : |
| Defendant. | : |

## RECOMMENDATION

The Plaintiff herein filed this Social Security appeal on April 14, 2010, challenging the Commissioner's final decision denying his application for disability benefits, finding him not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). Jurisdiction arises under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."  *Bloodsworth*, 703 F.2d at 1239.  "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius*, 936 F.2d at 1145-1146.

*Administrative Proceedings*

The Plaintiff filed an application for disability insurance benefits on January 8, 2007.  (Tr. 8).  His claims were denied initially and upon reconsideration.  (Tr. 74, 80).  A hearing was held before an Administrative Law Judge ("ALJ") in Macon, Georgia on August 13, 2008. (Tr. 8, 87). Thereafter, in a hearing decision dated September 11, 2008, the ALJ determined that the Plaintiff was not disabled.  (Tr. 8-16).   The Appeals Council subsequently denied review and the ALJ's decision thereby became the final decision of the Commissioner.  (Tr. 1-3).

*Statement of Facts and Evidence*

The Plaintiff was forty (40) years of age at the time of the hearing before the ALJ, and alleged disability since July 20, 2004, primarily due to back and neck pain from back injuries in 1998 and 2004, and depression. (Tr. 26, 29, Doc. 10).  Plaintiff has a high school education and past relevant work experience as a laundry laborer, hot press machine operator, clean up worker, and zipper machine operator. (Tr. 29, 14).

As determined by the ALJ, Plaintiff suffers from severe impairments in the form of lumbar degenerative disc disease and depression, and the following non-severe impairments: "noncardiac

chest pain; crack cocaine addiction; and alcohol abuse in remission[.]" (Tr. 10).  The ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment, and he remained capable of performing light work activity with a sit/stand option. (Tr. 12).  The ALJ found that Plaintiff could perform light work as follows:

> He can occasionally stoop, crawl, crouch, balance, and kneel. The claimant is limited to simple routine work that does not require extended concentration to perform detailed or complex tasks.  Due to medication side effects he cannot drive a motor vehicle, work around machinery, or at unprotected heights.

(Tr. 12).  Although Plaintiff could not return to his past relevant work, the ALJ considered the Plaintiff's age, education, work experience, and residual functional capacity, and applied the Medical-Vocational Guidelines to determine that Plaintiff remained capable of performing other jobs that existed in significant numbers in the national economy, and thus, was not disabled.  (Tr. 14-15).

## DISCUSSION

Plaintiff argues that the ALJ failed to properly consider and give proper weight to Plaintiff's examining physicians, erred in applying the "medical improvement" standard, and failed to obtain a consultative examination. (Doc. 10).

*Treating Physician*

The determination of the residual functional capacity is an administrative assessment based on all the evidence of how Plaintiff's impairments and related symptoms affect his ability to perform work-related activities. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The regulations state that the final responsibility for assessing a claimant's residual functional capacity rests with the ALJ, based on all the evidence in the record. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c).  Relevant

evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

When deciding the evidence, "[t]he testimony of the treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Commissioner's regulations also state that more weight should be given to opinions from treating sources because they can provide a detailed look at the claimant's impairments. 20 C.F.R. § 404.1527(d)(2). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. "Good cause" as to why the Commissioner did not rely on the treating source's opinion can exist when the physician's opinion was not supported by the record evidence, the evidence supported a contradictory finding, or the physician's opinion was conclusory or inconsistent with the physician's own medical records. *Id.*

Plaintiff contends that the ALJ erred in determining Plaintiff's residual functional capacity because the ALJ discounted the opinion testimony of Dr. Stefanis, Plaintiff's treating physician. (Doc. 10). Dr. Stefanis submitted his patient records regarding Plaintiff, wherein Dr. Stefanis stated, "[i]t is my opinion that the patient is unable to work and should be considered disabled" because of Plaintiff's multiple spinal procedures. (Tr. 197, 417). The ALJ found the statement regarding disability to be contrary to the record as a whole, and further, found the statement to be an opinion that is reserved for the Commissioner. (Tr. 13). The ALJ states that he "considered Dr. Stefanis' opinion that the claimant is disabled, but give[s] it less evidentiary weight as the objective medical evidence supports a residual functional capacity that prevents his past work, but not all work in the national economy." (Tr. 13).

4

Dr. Stefanis's medical records show that Plaintiff began experiencing back problems from an "on the job" injury in 1997. (Tr. 201). Dr. Stefanis performed back surgery on Plaintiff in 1998, and again in 2004 after Plaintiff was involved in a car accident. (Tr. 201). In September 2005, x-rays were taken of Plaintiff's back and compared to x-rays taken in October 2004. (Tr. 221). The x-rays showed degenerative disc disease at L4-5, but there was "no significant impingement or enhancing scar seen." (Tr. 231). Dr. Stefanis examined x-rays of Plaintiff's back throughout 2004 and 2005, and stated that the back fusions were "healing nicely." (Tr. 204 – 208).

Throughout 2005, Dr. Stefanis's own records state that Plaintiff could stand on his toes and heels, his motor examination was normal, his straight leg test showed pain at 60° on the right side and no pain on the left, and all other muscle groups were testing "normal." (Tr. 203, 205 – 206). Moreover, by the end of 2006, Dr. Stefanis's records continued to state that Plaintiff's motor examination was normal, and straight leg raises caused pain at 60° on the right leg and no pain on the left. (Tr. 190). Dr. Stefanis's records did not markedly change throughout 2007. (Tr. 417 – 420). The ALJ found that, while Dr. Stefanis's records show that Plaintiff has limitations, Dr. Stefanis's records do not support the statement that Plaintiff is disabled.

Furthermore, the ALJ did not find Dr. Stefanis's opinion regarding Plaintiff's disability to be consistent with the medical evidence. (Tr. 13). Plaintiff's medical history shows that Plaintiff received relief from his pain and symptoms after his back surgeries, but once the pain returned he was referred to The Hemlock Pain Center. (Tr. 204, 206 – 207, 201). In 2005, Dr. Tarabadkar, of The Hemlock Pain Center, noted that Plaintiff's x-rays revealed no major problems. (Tr. 202). Examinations of Plaintiff in 2006 and 2007 revealed a decrease in the range of motion in Plaintiff's back; however, Plaintiff's muscle strength was well preserved, he had no sensory deficits, and his straight leg raises were normal. (Tr. 322, 356, 360, 411). By June of 2007, Plaintiff stated he was

5

walking a mile and a half every day, and Dr. Tarabadkar noted that there had been significant improvement to Plaintiff since he began taking anti-depressant medication. (Tr. 356).  In 2007 and 2008, Plaintiff reported a 60% improvement in his pain.  (Tr. 401 – 407).  While Plaintiff's medical records show complaints of back pain, the records do not show evidence of factors such as motor loss or weakness; thus, Dr. Stefanis's opinion that Plaintiff was disabled is inconsistent with Plaintiff's medical history.

     The ALJ determined that Dr. Stefanis's opinion of Plaintiff's disability was inconsistent with his own medical records and his opinion was not supported by the record as a whole.  As the ALJ clearly articulated his reasoning for not relying on Dr. Stefanis's opinion that Plaintiff was totally disabled, and the ALJ's decision is supported by substantial evidence, the ALJ did not commit reversible error.

     Plaintiff also briefly states that the ALJ "completely discounted" the Family Behavioral Care Center of Central Georgia's opinion that Plaintiff suffers from major depression, and that the ALJ failed to consider Plaintiff's chest pains. (Doc. 10).

     In regard to Plaintiff's depression, the ALJ determined that Plaintiff "showed significant improvement in his symptoms once he was started on anti-depressant medication." (Tr. 14).  The ALJ discussed Dr. Finley's records, Plaintiff's psychiatrist at the Family Behavioral Care Center of Central Georgia, and found that Plaintiff's depression was described as mild in January 2008.  (Tr. 11, 469).  Moreover, Dr. Finley found Plaintiff to be stable by August 2008. (Tr. 11, 467).  Plaintiff only cites to the 2007 records; however, throughout 2008 Plaintiff was described to have mild depression and was stable.  As the ALJ relied on the treatment notes provided by Dr. Finley, the ALJ did not discount Family Behavioral Care Center's opinion.

     Plaintiff also alleges that the ALJ erred when he did not provide limitations due to Plaintiff's

abdominal pain, chest pain, and abnormal ECG. (Doc. 10).  Plaintiff states that the records from the Medical Center of Central Georgia document Plaintiff's complaints.  While the medical records do note that Plaintiff complained of these pains, the objective medical records do not support a limitation.  The objective medical evidence shows that Plaintiff's ECG was abnormal in June of 2007, but was reported as "otherwise normal" in March of 2008.  (Tr. 451, 433).  Additionally, Plaintiff's treadmill stress test was normal.  (Tr. 456).  Plaintiff's colonoscopy also was normal other than moderate internal hemorrhoids, and additional testing of the abdomen was normal. (Tr. 437, 443).  Thus, there was sufficient evidence contained within the Medical Center of Central Georgia's records to show that Plaintiff did not have any limitations based on his complaints of abdominal and chest pain.  Accordingly, the ALJ did not commit reversible error when he determined that Plaintiff's complaints of abdominal and chest pain did not limit the residual functional capacity beyond light work with a sit/stand option.

*Medical Improvement*

Plaintiff maintains that the ALJ erred when he applied the "medical improvement" standard without finding any period of disability.  The "medical improvement" standard applies to an individual who has been found disabled at one time, yet is deemed not disabled after medical improvement.  *See* 20 C.F.R. § 404.1594.  Plaintiff was issued a prior unfavorable decision in August 2006, wherein the ALJ determined Plaintiff could perform sedentary work.

In the current case, the ALJ found that the record reflected that Plaintiff was capable of light work with a sit/stand option, and thus, had shown improvements since the August 2006 decision.  The ALJ does not appear to be applying the "medical improvement" standard, but is merely providing an explanation as to why he has determined that Plaintiff is more capable now than in 2006.  The ALJ notes that Plaintiff has had improvements in his complaints of pain, Plaintiff is now

able to walk one and a half to two miles daily, his wife is pregnant, and he fathered a six month old child. (Tr. 12). Further, since his first unfavorable decision, Plaintiff's depression has been identified as mild and Plaintiff is stable. (Tr. 467, 469). The ALJ determined that the new evidence showed Plaintiff has had some "renewed level of activity over the last year and a half." (Tr. 12). After examining the entire record, the ALJ determined that Plaintiff was capable of performing light work with a sit/stand option. *See Randolph v. Astrue*, 291 Fed. Appx. 979, 982 (11th Cir. 2008) (finding ALJ did not err when he found that the evidence supported that the plaintiff had improved and should no longer be restricted to only sedentary work).

Moreover, even if the record does not provide substantial evidence to show improvement, there is no reversible error. The ALJ stated, "I note that even at the sedentary RFC, the vocational expert has identified a significant number of would be jobs that [Plaintiff] could perform in the economy." (Tr. 15). The vocational expert testified that there were sufficient jobs in the national economy available to Plaintiff with either a residual functional capacity of light work or sedentary work. *See e.g. Hess v. Astrue*, 2009 WL 3161377, *4 (E.D. Ky. Sept. 28, 2009) (affirming the Commissioner's decision when the record failed to demonstrate an improvement in the plaintiff, but the vocational expert's testimony demonstrated that the plaintiff could still perform a significant number of jobs in the national economy). Accordingly, the ALJ did not err when he determined that Plaintiff was more capable now than in August of 2006.

*Consultative Examination*

Plaintiff initially states that he requested that the ALJ order a consultative examination, which the ALJ indicated he would consider. (Doc. 10). Plaintiff claims that the ALJ made no reference to such a request or stated any rationale for denying the consultative examination. However, the ALJ stated that "the claimant requested a psychological consultation but I have declined that request, as

the medical evidence adequately described his current mental functioning." (Tr. 14). Thus, this allegation is without merit.

Plaintiff asserts that the ALJ committed error when he failed to order a consultative examination of Plaintiff's mental impairments. The ALJ has an obligation to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997). In developing the record, the ALJ is normally required to order consultative examinations only when the evidence presented in the record is insufficient to make a decision. *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).

In this case, there is no evidence to indicate the record is insufficient for the ALJ to make a fair decision regarding Plaintiff's mental impairments. The evidence presented to the ALJ provided treatment notes, records, and a psychiatric review. The evidence contained the treatment notes from Family Behavioral Care, a treating facility. Furthermore, the treatment notes of Dr. James Finley, Plaintiff's psychiatrist, were included in the record. (Tr. 467 – 474). The treatment notes showed the Plaintiff was doing well on his depression medications, was stable, and his depression had improved. (Tr. 467 – 474). Additionally, Dr. Tarabadkar observed significant improvement to Plaintiff since he began taking anti-depressant medication. (Tr. 356). The record also contained a psychiatric review technique, which outlined Plaintiff's mental functional limitations. (Tr. 365-377). Moreover, Plaintiff bears the burden to establish a disability, not the Commissioner. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). As such, the record contained substantial evidence for the ALJ to render a decision.

## CONCLUSION

As the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, the Commissioner's decision is

hereby **AFFIRMED** pursuant to Sentence Four of § 405(g).  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this Recommendation with the Honorable Marc T. Treadwell, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

   **SO RECOMMENDED**, this 18th day of August, 2011.


                              s/ *THOMAS Q. LANGSTAFF*

                              **UNITED STATES MAGISTRATE JUDGE**


llf